**James Ellison, Plaintiff-Appellee, v. Sinclair Refining Company, Defendant-Appellant.**

**Gen. No. 63–F–16.**

Fourth District.

May 14, 1963.

Gordon Burroughs, of Edwardsville, and Robert D. Barnes, of Chicago (Burroughs, Simpson & Burroughs, McBride, Baker, Wienke & Schlosser, of counsel), for appellant.

Moran, Beatty & Hiscott, of Granite City, for appellee.

HOFFMAN, JUSTICE.

This is an action under the Merchant Marine Act of 1920, 46 USC 688 (commonly referred to as the Jones Act), and under the general maritime law for personal injuries. A jury trial resulted in a verdict of $30,000 against the defendant. Upon judgment being entered on the verdict by the trial court, this appeal followed.

Plaintiff's complaint is in two counts: Count I, under the Jones Act, alleges that the defendant negligently furnished plaintiff sleeping quarters which were so defective in either design or condition of repair as to proximately cause plaintiff's injuries. Count II, under the general maritime law, alleges that

the sleeping quarters were so unsatisfactory or unfit as to render the defendant's vessel unseaworthy.

The plaintiff was a deckhand on one of defendant's towboats, the Sinclair St. Louis. He was assigned a lower bunk in a certain stateroom and retired to that bunk to sleep on the night of the accident in question. The plaintiff testified that sometime after he had been asleep he was awakened, and he jumped up and hit his head on the lower part of the bunk above him; that he lay back down and felt a pain like a butcher knife in his back. He stated that as he laid there he could feel dirt and paper dropping from the bunk above upon his face. He further testified that the slats in the top bunk were tongue and groove flooring, but that they were not put together solidly and that shortly after the incident, one of these slats was missing.

The man in the top bunk noticed the following morning that one of the slats in his bunk was out. The mate testified that the plaintiff reported to him that a slat had fallen from the upper bunk and hit him, which awakened him, causing him to jump up suddenly and resulted in his bumping his forehead on the upper bunk and hurting his back. The mate and captain the morning after the accident examined the upper bunk and found that there was a slat missing and that the strip that held the slat in place was cracked and was away from the side board of the bed approximately ¾". At the trial a civil engineer, who had made certain examinations and measurements, testified that the distance from the bottom bunk on which the plaintiff was sleeping to the top bunk was such that if the plaintiff sat up suddenly he would bump his head on the bottom of the top bunk; he also testified that a crack in the side supporting piece was 4" long and apparently went all the way through the piece; he further testified that this supporting piece would have a tendency to bend down and let the slats

fall out and that if this supporting strip were pulled away ¾″ there would be nothing to hold the slat.

There was evidence from witnesses that the plaintiff the morning after the accident appeared to be in pain and had evidence of being struck over his left eye.

The defense is that "there was no evidence introduced at trial from which the jury could find that the defendant was negligent and there was no evidence introduced from which the jury could find that the vessel or appliance were unseaworthy." The defendant further argues that the jury was improperly instructed, that an exhibit was wrongfully refused admission, and that the verdict was excessive.

■ ■ Under the Jones Act Congress extended to seamen the remedies made available to railroad employees under the Federal Employers' Liability Act (45 USCA sec 51 et seq.). Mitchell v. Trawler Racer, Inc., 362 US 539, 80 S Ct 926, 931. Thus, under the Jones Act, recovery is dependent upon negligence which must be the proximate cause of the injury. Swain v. Mississippi Valley Barge Line Company, 244 F2d 821.

■ Under general maritime law a shipowner has an absolute and nondelegable duty to furnish a seaworthy vessel, which is a vessel reasonably safe and fit in hull, gear, appliances and equipment for their intended use. Seas Shipping Co. v. Sieracki, 328 US 85, 66 S Ct 872.

There is no indication upon which theory the verdict in this case rests, but the evidence regarding liability falls into two categories: (1) that relating to the type and dimension of the bunk in which plaintiff was sleeping, and, (2) the condition of such bunk at the time of the accident.

Many pages of the abstract and briefs are devoted by both sides to the development and explanation of

these facts. The defendant argues: that the dimensions of the bunk do not establish that it was unseaworthy; that it was proven by the evidence of other masters that the bunk was similar to those on other river towboats; and that, therefore, the jury could draw no inference of unseaworthiness from the bunk's construction. Defendant argues, with regard to the bunk's condition, that it was mathematically impossible for the slat to fall upon plaintiff; that the slats were tongue and groove, and one couldn't fall without at least a 4″ slippage; and that there was no proof of the slat's fall or of any slippage.

The plaintiff, on the other hand, points to evidence in the record showing that the side supporting strip on the bottom of the top bunk was cracked all the way through and that a sideways movement of only ¾″ would allow a slat to come down. He further points out that there is no dispute but what a slat was out of the upper bunk, and emphasizes that defendant has never offered any plausible suggestion as to how that slat came out.

██ Under the Jones Act, a seaman is not entitled to go to a jury by merely claiming that his injury was caused by employer's negligence. Rather, he must introduce enough evidence so that a fairminded jury might legitimately hold in his favor. Smith v. Reinauer Oil Transport, 256 F2d 646. The test of a jury case "is simply whether the proofs justify with reason the conclusion that employer negligence played any part . . . in producing the injury." Rogers v. Missouri Pac. R. Co., 352 US 500, 77 S Ct 443.

█ Under general maritime law a shipowner is not obligated to furnish the best, most modern and most convenient appliances or machinery. He discharges his full duty when he supplies proper and suitable equipment for doing the work with reasonable safety. Doucette v. Vincent, 194 F2d 834.

**441**

In the similar case of Carter v. Schooner Pilgrim, Inc., 238 F2d 702, where the plaintiff was injured when thrown from his bunk, the Court of Appeals said:

> "In attempting to decide whether there was introduced sufficient evidence of causal negligence under Count I, and unseaworthiness under Count II, this court must be '. . . concerned solely with whether the testimony on behalf of the plaintiff, and reasonable inference to be drawn from it in the light most favorable to the plaintiff, made out a prima facie case allowing the plaintiff to have a jury pass upon his cause of action.'"

In the instant case the defendant lays great emphasis upon the uncontroverted evidence "that the bunk in question conformed to the standards of all towboats on the rivers"; and it argues that "there was no evidence introduced, expert, lay or otherwise, from which the jury could find that the dimensions of the bunk constituted an unseaworthy condition or negligence on the part of the defendant." We agree that, insofar as the dimensions and construction of the bunk are concerned, there is no basis for liability, but the proofs in the record regarding the weakened condition of the bunk were sufficient in this case to allow the jury to draw a reasonable inference of either negligence or unseaworthiness; and for us, on the state of this record, to hold that a factual situation for the jury was not present, would be an improper invasion of the province of the jury.

Defendant further claims plaintiff was bound by a statement made in closing argument that the only issue in the case was the dimensions of the bunk, thus implying that it was abandoning any claim that a slat fell and struck plaintiff. While counsel may make binding admissions of fact, we do not be-

lieve that this statement in the final argument would entitle the defendant to a directed verdict. Chicago City Ry. Co. v. Shaw, 220 Ill 532, 534, 77 NE 139. The statement didn't negate specifically, nor did it waive positively, any claim based on the falling slat.

█ Defendant's instruction No. 5 directed a verdict if the jury should find that plaintiff's injury was the result of an unavoidable accident. It is claimed that refusal to give this instruction was reversible error and for authority, defendant cites Jesonis v. Olson, 238 F2d 307 (309) where the instruction was given and approved. It does not thereby follow that refusal to give such an instruction would be reversible error. We note that I.P.I. rejects the use of this type of an instruction.

█ The refusal to admit a photograph, defendant's exhibit 2, is likewise claimed to be reversible error. It was offered to show the position of the slat supporting strip and the indentations. Defendant's Exhibit 2 was taken in January of 1959. The master pilot, Henry Briggs stated that before the picture was taken, he took a screwdriver and inserted it in the indentation in the wood and opened it up the way it appeared to him on the day of the accident. Defendant cites Terry v. City of Chicago, 320 Ill App 342, 51 NE2d 71. There, the trial court granted a new trial because it had admitted in evidence a photograph of a scene taken sometime after the accident. The Appellate Court reinstated the verdict, saying the trial court did not err in admitting the photograph even though taken sometime after the occurrence. In the present case, defendant introduced in evidence a drawing purporting to show how the upper bunk would look to a person lying in the lower bunk. Other drawings were also in evidence which clearly showed the general layout of the room and the appearance of the bunk. We hold the court did not commit reversible

443

error in refusing to admit this photograph that had, in a sense, been recreated to show a situation that existed several months earlier. At most, the photo was cumulative, and there remained in evidence sufficient explanation of the simple fact sought to be demonstrated by the photograph.

█ █ The last contention of defendant is that the verdict was excessive. In part, it blames this onto an incident that occurred during the trial. At one time, the plaintiff fell out of his chair and lay flat on the floor in front of the bench. The Court excused the jury and listened to arguments for a mistrial. The court reserved its ruling on the motion until later and apparently gave the matter considerable deliberation. It was held in Stephans v. Chicago Transit Authority, 28 Ill App2d 229, 171 NE2d 229, that emotional outbursts of weeping by plaintiff and his wife, together with other unsatisfactory testimony on the injuries, justified a new trial. On the other hand, in Blachek v. City Ice & Fuel Co., 311 Ill App 1, 35 NE2d 416, the court held that plaintiff's burst of sobbing didn't necessarily warrant a new trial, it being for the trial judge to decide. Each case is different, and we are not convinced that the incident in this trial necessarily requires a new trial. The trial judge gave it his considered judgment. We are willing to accept his judgment in the matter as it is not apparent to us that the Court was clearly wrong.

As further grounds for contending that the damages were excessive, defendant argues that there was no causal connection proven between the alleged trauma and the hypertrophic spurring claimed; that a sacroiliac sprain is the only injury shown, and that plaintiff was making more money on heavy labor after the accident than before. The plaintiff produced evidence to the effect that he lost considerable wages up to the time of trial; that he couldn't work steadily

after the accident; that he could not do some types of heavy work which he performed before; and a doctor testified on his behalf as to the permanency of his condition.

It has been repeatedly held that the question of damages is peculiarly one of fact for the determination of the jury. We have carefully examined all of the instructions which were given in this case and have carefully reviewed the evidence both as to liability and damages and are satisfied that the jury was adequately and properly instructed on the duty owed the plaintiff by the defendant and the measure of damages. We point out that the jury was given two special interrogatories at the request of the defendant which required them to make specific findings on the issues of negligence and unseaworthiness pertaining to the sleeping quarters furnished the plaintiff. Both of these special interrogatories were answered by the jury consistent with their general verdict.

Finding no error the judgment is affirmed.

Affirmed.

SCHEINEMAN, PJ and CULBERTSON, J, concur.