STANLEY NOWAKOWSKI, Plaintiff-Appellee, *v.* HOPPE TIRE COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 60017

Opinion filed June 3, 1976.

McKenna, Storer, Rowe, White & Haskell, of Chicago (Royce Glenn Rowe and Patrick E. Maloney, of counsel), for appellant.

Wachowski & Wachowski and Reed, Lucas & Doherty, both of Chicago (Stephen J. Schlegel and Charles J. Reed, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Stanley Nowakowski, brought a personal injury action based on negligence and strict liability in tort against the defendant, Hoppe Tire Company. Plaintiff was injured when a truck tire which he was mounting exploded and struck him. Defendant is a corporation engaged in the business of repairing, reconditioning, and selling tires. After a trial in the circuit court of Cook County, a jury returned a verdict in favor of plaintiff for $105,000.00. The trial court entered judgment on the verdict, and denied defendant's post-trial motions.

On August 28, 1967, plaintiff was employed by Frank Cordray Motor Service (hereinafter Cordray), as a mechanic to service Cordray's truck fleet. On that day he proceeded to mount certain "run-out" tires on a vehicle that Cordray planned to trade in. Plaintiff had mounted three tires and was in the process of mounting the fourth when the accident occurred. The fourth tire did not align on the hub properly and, to correct the difficulty, plaintiff hit the tire twice with a hammer. The tire exploded and the metal rim struck plaintiff, injuring him severely. He sustained cerebral injuries and suffered memory lapses.

The tire and wheel assembly involved in the occurrence consists of a 10:00 x 20 size tire, a split rim on which the tire was mounted, and a locking ring. Approximately one-fifth of Cordray's tires and wheel assemblies were of this type. Though Cordray used a number of tire companies for tire repair and supply, defendant had the majority of its business.

Plaintiff introduced evidence that the accident was caused by the defective condition of the locking ring as it was seated. The ring was corroded with years of rust, and was distorted and beat out of shape. Plaintiff also presented testimony that it was normal procedure in mounting tires to employ some force and, if necessary to use a hammer.

Plaintiff testified that on the afternoon of the occurrence he observed Eddie Goddard, secretary of the defendant company, deliver a number of run-out tires to the Cordray garage. Plaintiff saw Goddard stack the tires along the north wall and thereafter plaintiff proceeded to mount them on Cordray's trade-in vehicle. Plaintiff further testified that he was working with one of the tires delivered by Goddard when the explosion occurred. Three of plaintiff's co-workers testified that, to their

knowledge, defendant was the only company that delivered tires to Cordray.

At trial defendant, through its officers Craig and William Goddard, introduced its invoices and billing compilation for August 1967 which indicated that, at most, it delivered two 10:00 x 20 tires to Cordray on the day in question. Eddie Goddard testified that he recalled delivering one tire to Cordray on the day of the accident. This recollection was not of independent origin, but was based on a review of the invoices. Cordray's president, Lester Cordray, testified for defendant that the tires were not segregated according to supplier at Cordray. Cordray also testified that he could not determine which company delivered the tire that injured plaintiff.

On appeal defendant contends that the jury verdict is contrary to the manifest weight of the evidence; that the court erred in permitting plaintiff's counsel to read to the jury an answer to an interrogatory which had not been introduced into evidence; that the court improperly instructed the jury; that certain trial errors deprived defendant of a fair and impartial trial; that the court erred in allowing a layman to express an opinion as to the cause of the explosion; and that the court erred in allowing an opinion from plaintiff's expert witness as to the explosion causation in response to a hypothetical question.

Defendant's initial contention is that the verdict of the jury in favor of plaintiff is against the manifest weight of the evidence. The core of defendant's argument is that the record contains no substantial evidence that defendant delivered the tire involved in the occurrence to Cordray. Plaintiff's testimony is the only evidence directly linking defendant to the tire that exploded, and defendant suggests that brain injury suffered in the explosion renders plaintiff's testimony inherently unbelievable. Defendant further maintains that in view of its business records impeaching plaintiff's testimony, the verdict lacks evidentiary support and is clearly erroneous.

■■■ A verdict is against the manifest weight of the evidence when an opposite conclusion is clearly apparent (*Purdom v. Swanson* (1970), 130 Ill. App. 2d 549, 263 N.E.2d 883), or the finding of the jury appears to be unreasonably arbitrary and not based on the evidence. (*Cora v. Chicago Housing Authority* (1971), 131 Ill. App. 2d 23, 268 N.E.2d 497.) If there is evidence which, if believed, would support the verdict, the trial court or a reviewing court should not interfere with the result. In the present case, we are unable to say that a verdict in defendant's favor was required by the evidence. Plaintiff testified that he observed defendant's driver deliver a particular type of tire, noticed where the driver stacked the tires, and was in the process of mounting one of those tires when the explosion occurred. We do not find the jury's acceptance of plaintiff's testimony and

rejection of defendant's evidence, including its exhibits, to be so unreasonable or arbitrary as to require judicial interference with the verdict. There is always a possibility that corporate records are in error, and they deserve no special presumption of credibility as compared to opposing testimony of a witness. (*Gorman v. St. Francis Hospital* (1965), 60 Ill. App. 2d 441, 208 N.E.2d 653.) Defendant argues that because plaintiff suffered cerebral injury in the accident his testimony is inherently unbelievable and cannot support the verdict in his favor. When plaintiff was called as a witness, defendant offered no objection that he was incompetent to testify. The question of plaintiff's competency was therefore waived (*In re Estate of Marcucci* (1972), 5 Ill. App. 3d 484, 285 N.E.2d 141), and the weight to be accorded his testimony was for the jury. We also note that at trial defendant attempted to minimize plaintiff's injuries, and introduced evidence that he had made a good recovery. We conclude that the jury was in the best position to determine the truth of the conflicting testimony. The verdict was not against the manifest weight of the evidence.

We shall next consider defendant's contention that various errors committed during trial deprived it of a fair trial and require reversal. Defendant urges that an emotional outburst by plaintiff required declaration of a mistrial; that comments made by plaintiff's counsel during voir dire and final argument were improper; that certain admissions of fact were improperly used; and that an exhibit prejudicial to defendant was delivered to the jury during deliberations.

The record discloses that plaintiff, while being cross-examined about events immediately preceding the explosion, became disoriented and called out for his wife. The judge immediately ordered the jury out of the courtroom. Mrs. Nowakowski came up to the witness stand and snapped her fingers in front of plaintiff's face. Defense counsel requested a mistrial, initially maintaining that the entire incident took place in full view of the jury. The trial court, however, stated that the finger snapping took place outside the presence of the jury. Defense counsel then conceded that Mrs. Nowakowski "started to come up" while the jury was present in the courtroom. Defendant's motion for a mistrial was denied.

■■ An emotional outburst or other dramatic occurrence, where innocent and partially involuntary, is not grounds for a mistrial unless aggravated and repeated or unless the demonstration unquestionably influenced the jury's ability to try the issues fairly. (*Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 216 N.E.2d 14.) The trial court is in the best position to determine this issue and, absent an abuse of discretion, its decision will not be disturbed. (*Ellison v. Sinclair Refining Co.* (1963), 41 Ill. App. 2d 436, 190 N.E.2d 635.) Nothing in the record suggests that the conduct of plaintiff or his wife was intentional or the

result of improper motive. The trial court took prompt action in excluding the jury and, having witnessed the entire incident, determined that plaintiff's conduct did not improperly influence the jury. The court did not err in denying defendant's motion for a mistrial.

■■ During the voir dire, plaintiff's counsel commented to one prospective juror that he believed that the evidence would show severe brain injuries. He commented to another prospective juror that because of the nature of the injury, plaintiff would not attend the entire trial. In both instances, the trial court promptly sustained defendant's objections to the comments. Under the circumstances, we do not find defendant's claim of prejudice to be persuasive.

■■ During closing argument, plaintiff's counsel expressed his opinion that plaintiff was incapable of telling a lie. Defendant interposed no objections to the remarks, and therefore waived any objection in this court. *McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708.

Prior to trial, plaintiff's co-counsel obtained a statement from Eddie Goddard, apparently not knowing that the latter was an officer of the defendant corporation. The court properly suppressed that statement for use at trial. However, prior to trial, the court ordered defendant to answer certain requests for admission of fact filed by plaintiff. Defendant maintains that these requests for admission of fact were filed by virtue of information contained in the statement which had been suppressed. It also contends, therefore, that the court erred in ordering defendant to answer the request for admission of facts.

The record affirmatively shows that plaintiff had independent knowledge of facts set forth in the request to admit. Counsel could seek corroboration of plaintiff's knowledge by filing requests for admission of fact. The court did not err in ordering the requests to be answered and in allowing the admission of fact into evidence.

■■ Similarly, we find no error in the trial court's ruling allowing a compilation of lost time to be delivered to the jury after deliberations had begun. The trial court has considerable discretion in determining whether an exhibit may be taken to the jury room (*Fahrforth v. Kwiatkowski* (1967), 79 Ill. App. 2d 300, 224 N.E.2d 641), and there was no abuse of discretion in the present case. The exhibit in question was properly admitted into evidence, and extraneous notations, to which defendant objected, were deleted before the document was delivered to the jury. The deletions of the notations caused the delay. Prior to the commencement of deliberations, the trial court informed the jury that one exhibit would be delivered later. Whether viewed individually or cumulatively, the various trial errors claimed by defendant did not deprive it of a fair and impartial trial and do not warrant reversal.

We consider next defendant's contention that the trial court committed

reversible error by allowing plaintiff's counsel during closing argument to argue matters not in evidence. Over defendant's objection, the trial court allowed counsel to read plaintiff's answer to a supplemental interrogatory filed by defendant. The answer had not been introduced into evidence during trial.

A reviewing court must consider the trial as a whole to determine if a party's rights have been substantially prejudiced by his opponent's argument to the jury. (*Maguire v. Waukegan Park Dist.* (1972), 4 Ill. App. 3d 800, 282 N.E.2d 6.) The trial court is in the best position to make this determination and, absent an abuse of discretion, its ruling will be upheld. *Elizer v. Louisville & Nashville R.R. Co.* (1970), 128 Ill. App. 2d 249, 261 N.E.2d 827.

The matter read by plaintiff's counsel and complained of by defendant deals exclusively with the chain of possession of the lock ring involved in the occurrence. In response to an initial interrogatory filed by defendant, plaintiff denied any knowledge of the whereabouts of the ring. Approximately a year prior to trial, plaintiff filed an answer to a supplemental interrogatory in which he set forth the chain of possession and the whereabouts of the ring.

During cross-examination of plaintiff, defense counsel introduced and read into evidence plaintiff's initial answer to the interrogatory. During closing argument, defense counsel alluded to plaintiff's answer to the initial interrogatory in which plaintiff denied any knowledge of the ring. Before beginning his rebuttal closing argument, plaintiff's counsel out of the presence of the jury requested that he be permitted to read plaintiff's answer to the supplemental interrogatory which was consistent with plaintiff's trial testimony. Over defendant's objection, the trial court permitted him to do so.

■■ Plaintiff had introduced extensive testimony regarding the chain of possession through his own testimony, that of one of his co-workers, and that of the professional expert witness. Defendant had ample opportunity to cross-examine each of the witnesses involved. Moreover, the answer to the initial interrogatory was brought out during the cross-examination of plaintiff. Shortly thereafter, plaintiff became confused, and plaintiff's counsel restricted his re-direct examination to prevent any episode from occurring in the presence of the jury. It would have been at that point in the trial that plaintiff's counsel would have had plaintiff identify his signature and introduce into evidence the answer to the supplemental interrogatory. Given all these circumstances, we cannot say that the trial court ruled unfairly or committed reversible error by allowing plaintiff's counsel to read the answer to the supplemental interrogatory to the jury in final argument. Defendant relies heavily on the case of *Flewellen v. Atkins* (1968), 99 Ill. App. 2d 409, 241 N.E.2d 667, in

urging error on this point, but that case differs fundamentally from the present case. In *Flewellen,* plaintiff's counsel during closing argument referred to a document which the trial court had excluded from evidence.

Defendant next contends that the jury was instructed erroneously.

This suit was based on negligence and strict liability in tort. The jury was instructed on both theories and returned a general verdict. Defendant initially argues that the trial court erred in submitting the issue of strict liability to the jury. The evidence, it is urged, establishes that defendant essentially is a service organization engaged in the business of repairing and rebuilding equipment owned by its customers. Defendant maintains that the doctrine of strict liability as applied to sellers has no application to this case.

■■ It is undisputed that defendant is primarily a service organization. Considerable evidence, however, indicates that not infrequently defendant substituted customer equipment with parts from its own stock. Plaintiff, as well as co-worker John Mitchell, testified that on a number of occasions Cordray did not receive its own assembly from defendant after a repair. Plaintiff also testified that wheel assemblies as well as tires owned by Cordray were always in excellent condition. The equipment delivered on the day of the occurrence was of extremely poor quality and plaintiff knew it was not from Cordray's stock. A supplier who placed a defective product in the stream of commerce incident to his regular course of business may be held liable under a theory of strict liability. (*Bainter v. Lamoine LP Gas Co.* (1974), 24 Ill. App. 3d 913, 321 N.E.2d 744.) Formal sale of the defective product is not necessary in order for the doctrine to apply. The evidence contained in the record, together with all reasonable inferences, supports the conclusion that the defective tire assembly came from parts owned by defendant and supplied to Cordray in the regular course of its business. The evidence is sufficient to support a charge of strict liability in tort and the trial court properly submitted the issue to the jury.

■■ Defendant also challenges the propriety of the court's instruction on the burden of proof. The basis of the objection is that the instruction contains two conflicting peremptory charges, the first of which instructed the jury to find for the plaintiff if the jury determines that each element of either count of the complaint has been proved. The second peremptory charge refers to the affirmative defenses and directs the jury to find for defendant on count II if the jury finds that every element of the affirmative defenses has been proved. As the first peremptory charge ignored the affirmative defenses and misstated the law, defendant contends that its inclusion constitutes reversible error.

It is well established that instructions will be considered as a whole and, absent a showing of prejudice, technical errors will not be deemed

grounds for reversal. (*Martin v. Kralis Poultry Co.* (1973), 12 Ill. App. 3d 453, 297 N.E.2d 610.) The instruction in the present case is patterned on IPI 2d No. 21.02.02 as submitted by plaintiff, and IPI 2d No. 21.03 as agreed to by defendant. A correct instruction would have come entirely from IPI 2d No. 21.03, and the inclusion of peremptory language from IPI 2d No. 21.02.02 was error. However, the second peremptory charge contained in the instruction properly set forth the affirmative defenses, and directed the jury to find for defendant if the defenses were proved. In light of this, we do not think that the defective language in the instruction was so prejudicial to defendant as to warrant reversal. We note that defendant at trial failed to object to the peremptory language complained of on appeal. Defendant's ground for objection was that strict liability should not be submitted to the jury and that the instruction, as originally tendered, failed to mention the affirmative defenses.

■■ Defendant's final assignment of error regarding instructions concerns plaintiff's instruction no. 10, relating to the issues of the case. This instruction, based on IPI 2d No. 20.01.01, failed to set forth the affirmative defenses asserted by defendant. However, instruction no. 11 on the burden of proof informed the jury of the affirmative defenses and directed the jury to find in favor of defendant on count II if they found "any one of the defendant's affirmative defenses have been proved." Where instructions taken together as a whole substantially present the law of the case fairly to the jury they will be regarded as sufficient. (*Martin v. Kralis Poultry Co; McKinney v. Illinois Power Co.* (1960), 26 Ill. App. 2d 193, 167 N.E.2d 249.) When taken together with instruction no. 11, the instruction on the issues substantially advised the jury as to the issues and law involved in this case.

Defendant next contends that John Mitchell, a tire mechanic employed by Cordray, was not qualified to express an expert opinion as to the cause of the explosion. Defendant argues that because Mitchell had no engineering background he was not able to render an expert opinion based on a reasonable degree of "mechanical certainty."

■■ The knowledge required to qualify one as an expert may be obtained from study or experience, or a combination of both (*Cannell v. State Farm Fire & Casualty Co.* (1975), 25 Ill. App. 3d 907, 323 N.E.2d 418), and whether a witness qualifies as an expert is a matter within the sound discretion of the trial court. (*Northern Illinois Gas Co. v. Wienrank* (1965), 66 Ill. App. 2d 60, 213 N.E.2d 411.) Mitchell had been employed as a tire mechanic for some 18 years and had inspected and mounted thousands of tires. The trial court reasonably concluded that this extensive experience gave him special knowledge not shared by the average juror.

Defendant also suggests that Mitchell should not have been permitted to testify until the chain of possession of the tire assembly had been

established. However, Mitchell identified certain exhibits introduced by plaintiff as parts of the locking ring involved in the explosion. He stated that these were the same objects he examined after the accident, and testified that they were in the same condition at trial as when the injury occurred. The trial court did not err in permitting Mitchell to express his opinion as to the cause of the explosion.

■■ Defendant's final contention is that the trial court erred in allowing plaintiff's professional expert, a consulting engineer, to express his opinion regarding the cause of the explosion in response to a hypothetical question. The principal basis for this argument appears to be that certain facts had not yet been adduced in evidence prior to presentation of the hypothetical question. The expert witness testified prior to plaintiff's testimony, and the trial court permitted the hypothetical question subject to it being connected to the chain of possession of the ring. The plaintiff subsequently testified as to the chain of possession. Although the practice of allowing hypothetical questions based on facts, some of which have not been previously adduced in evidence, is not encouraged, under the circumstances of the present case the trial court did not abuse its discretion in permitting the expert witness to give his opinion in response to a hypothetical question.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MEJDA, P. J., and McGLOON, J., concur.