MENELAOS PAPAGEORGIOU, Plaintiff-Appellant, *v.* F. W. WOOLWORTH CO., Defendant-Appellee.

First District (2nd Division)   No. 76-109

Opinion filed November 21, 1978.—Rehearing denied December 29, 1978.

Nicholas T. Kitsos, of Chicago, for appellant.

Kirkland & Ellis, of Chicago (Francis B. Libbe, Gary M. Elden, and Shane H. Anderson, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff filed an action to recover damages occasioned by the alleged tortious conduct of defendant, F. W. Woolworth Co. Plaintiff alleged defendant committed the following torts: assault and battery, false imprisonment, malicious prosecution, and a violation of plaintiff's civil rights under 42 U.S.C. §1983. The jury returned a verdict in favor of defendant, F. W. Woolworth Co., on all counts. Plaintiff appeals.

The issues presented for review are (1) whether the court committed the following alleged errors which denied plaintiff a fair trial: the court improperly granted defendant's motion for a mistrial before a jury was impaneled;[1] the court refused to poll the jury; the court improperly struck the testimony of a witness; the court made improper remarks to the jury; (2) whether the court erred by allowing defendant's counsel to use allegedly unfair tactics during cross-examination; (3) whether the court's refusal to give instructions tendered by plaintiff caused the jury to be inadequately instructed; and (4) whether the jury's verdict was against the manifest weight of the evidence.

We affirm.

Mr. Papageorgiou (plaintiff) and his wife both testified to the following facts: As the Papageorgious were about to enter the store of defendant, F. W. Woolworth Co., on December 2, 1967,[2] they observed three small children striking the front windows of the store with chains. Plaintiff told the children to stop hitting the windows and then he and his wife proceeded into defendant's store. While in the basement of the store they saw a security guard (Hampton) accusing three children of stealing chains. They were the same children plaintiff previously observed

---

[1] The court declared a mistrial because of possible prejudice resulting from the statements of a prospective juror. A new jury panel was selected and the case proceeded to trial.

[2] The court notes with great concern the inordinate delay in bringing this case to a conclusion. To the extent that such delay is attributable to lack of diligence or dilatory maneuvers of either party hereto, we admonish that such delay is inimical to the orderly administration of justice and should not be countenanced.

standing outside the store. Plaintiff attempted to tell the guard that the boys didn't steal the chains, but the guard allegedly became belligerent, telling plaintiff to mind his own business. Plaintiff and his wife left the basement and went upstairs to resume their shopping. Plaintiff testified that while shopping on the first floor he heard someone in a loud voice ask, "Is that the man," and then plaintiff was struck by Hampton. While trying to defend himself, plaintiff allegedly was struck with chains and then severely beaten by Hampton and two other guards, Compton and Ranucci. Plaintiff was then allegedly maced and dragged into an elevator and taken upstairs to a security office where he was handcuffed to a chair to await the arrival of police. Plaintiff's wife testified that when the Chicago police arrived, one of the guards told her that he didn't know why they were holding plaintiff, "but we'll think of something." Plaintiff's wife also testified that she told Hampton she thought the incident occurred because the security guards were black and the Papageorgious were white.

A Chicago police officer, Lieutenant Drammis, testified that on December 2, 1967, he responded to an assignment to proceed to the Woolworth store on State Street to pick up a prisoner. When the lieutenant arrived at the security office, he found plaintiff had been maced and was handcuffed to a chair. One of the security guards told Lieutenant Drammis that plaintiff had interfered with Hampton's attempt to arrest some juveniles.

Lieutenant Drammis testified that plaintiff was taken to the First District Police station and charged with disorderly conduct. While at the station plaintiff removed his shirt, and Lieutenant Drammis observed red marks on plaintiff's back, shoulder and arm. Lieutenant Drammis testified that he wrote and filed a police report on December 2, 1967, about the Woolworth incident. When asked if he knew why certain words were deleted from the report, the lieutenant testified that he deleted certain "non-essential words" after the charges against plaintiff were dropped.

Mrs. Papageorgiou testified that prior to the incident occurring at the Woolworth store on December 2, her husband was in very good physical health and was working two full-time jobs.[3] On cross-examination she stated that she didn't remember whether her husband had taken a three-month leave of absence from one of his jobs in September 1967. Plaintiff's wife testified that she took three photographs of plaintiff's back on the morning of December 3, 1967, but the photographs were now faded and do not show the extent of his injuries.

Plaintiff testified that he had worked two full-time jobs before December 2, 1967, but was unable to do so after the occurrence at

---

[3] Plaintiff's two employers were Illinois California Express Corp. (ICX) and Chicago & Western Indiana R. & R. Co.

Woolworth's due to the pain he was experiencing. He admitted "his back gave out" three weeks after the incident at Woolworth's while lifting a roll of paper during work at ICX Corp., but he attributed the major cause of his back problems to the incident at Woolworth's. Plaintiff stated that he never received Workmen's Compensation for any injury occurring at work, but that he did receive "sick benefits" from both his employers whenever he was unable to work due to his back injury. Plaintiff acknowledged that on December 2, 1967, he was on leave of absence from Chicago & Western Indiana R. & R. Co. and was not scheduled to return before December 18, 1967. Plaintiff stated that after the occurrence at Woolworth's, he was treated by a Dr. Cheronis, but he could not now locate the doctor.

Dr. Arenson, staff doctor at the Kildare Clinic, testified for defendant that his clinic took X rays of plaintiff's back in May 1969. The doctor stated that "Mr. Papageorgiou's X rays revealed a minimal amount of osteoarthritis in the lumbar vertebrae in the back." Dr. Arenson explained that osteoarthritis is a bony growth that is caused by stress and strain, and it is not unusual to find a minimal amount of osteoarthritis in a person plaintiff's age whose employment requires some heavy lifting. The doctor stated that plaintiff's X rays showed no apparent back injury, but that X rays may not always show some injuries.

Dr. Arenson further testified that his records indicate plaintiff was treated at the Kildare Clinic in early 1968. The clinic's records reflect plaintiff complained of pain due to an injury caused by pushing a roll of paper at work on December 30, 1967, and that plaintiff did not mention any prior injury to his back.

Ollie Compton testified to the following facts: Compton was employed as a deputy sheriff on December 2, 1967, and also worked part time as a security guard for Woolworth's on State Street. On Saturday, December 2, Compton was working at the Woolworth store and was assigned to watch the first floor. Compton saw a security guard, followed by three juveniles and the Papageorgious, come up the escalator from the basement of the store. Compton saw the guard (Hampton) turn around as plaintiff touched Hampton on the shoulder. As Hampton turned to face plaintiff, plaintiff hit Hampton and knocked him down. Compton testified that he attempted to aid Hampton, but that neither he nor the other two guards struck plaintiff; that "Papageorgiou was doing all the swinging in an effort to hit Hampton." Compton stated that he was a lieutenant and then a captain with the sheriff's office, and he now works with the State's Attorney's investigative section.

Mr. Crow, the manager of personnel for the Chicago and Western Indiana R. & R. Co., testified that plaintiff took a 90-day leave of absence in September 1967 and returned to work on December 18, 1967. Plaintiff

worked every day from December 18, 1967, to February 9, 1968, excluding weekends, and he never reported suffering any injury. On February 9 plaintiff was furloughed due to lack of work, but he returned to work shortly thereafter.

Paul Schotte, the assistant manager and damage claims agent for plaintiff's employer, ICX Corp., testified that plaintiff reported injuring his back while pushing a roll of paper on December 30, 1967. Mr. Schotte also testified that plaintiff was involved in a fistfight with another employee on December 28, 1966. As a result of the fight plaintiff's employment was terminated on December 29, 1966, but he subsequently returned to work for ICX.

Dr. Elwitz Tannehille testified that the Kildare Clinic referred plaintiff to him. He testified that during his examination of plaintiff on January 9, 1968, plaintiff stated that he felt a severe sprain in his back while lifting a roll of paper at work on December 30, 1967. Dr. Tannehille stated that plaintiff denied having any previous trouble with his back.

Norman Young, the claims manager for Transport Indemnity Insurance Company on December 30, 1967, testified that he supervised the Workmen's Compensation claims made on plaintiff's behalf by ICX Corp. Compensation payments were made to Mr. Papageorgiou through March 29, 1968, for the injury occurring at work on December 30, 1967. Mr. Young stated that had he been informed that plaintiff was not completely disabled and was working at the railroad, he would not have authorized payment for the disability claim. Mr. Young's records reflect ICX reported that plaintiff suffered another back injury on May 22, 1969, and that medical benefits were again issued to plaintiff.

Donna Olds, an assistant to Chief O'Mara in the State's Attorney's Office, testified that Ollie Compton was not presently employed by the State's Attorney. The State's Attorney's records reflect Compton was assigned as a driver of the mobile units for the Fraud and Consumer Complaint Division during his employment with the State's Attorney.

Virginia Vazzano, a clerk in the personnel office of the sheriff, testified that to her recollection Ollie Compton was never a captain or lieutenant with the sheriff's office, but that her records did reflect a Cook County Sheriff's office routing slip dated October 16, 1970, reading: "Lieutenant Compton has been promoted to the rank of Captain. Please issue the proper credentials."

The jury found in favor of defendant on all counts.

I

■■ Plaintiff contends that the court erred in granting defendant's motion for a mistrial and proceeding with a new panel of jurors. The mistrial was declared during the voir dire examination of prospective jurors. One of

the prospective jurors stated that she would be biased against defendant because, in her opinion, a friend employed by defendant had been fired unfairly. After hearing argument, the court declared a mistrial. Whether prejudicial statements have interfered with a right to a fair trial is within the discretion of the trial judge. (See *McKasson v. Zimmer Manufacturing Co.* (2d Dist. 1973), 12 Ill. App. 3d 429, 437, 299 N.E.2d 38.) The matter of declaring a mistrial rests in the sound discretion of the court, and unless there is "some great abuse of discretion," its judgment is not reversible error. *Fitzsimons v. National Tea Co.* (2d Dist. 1961), 29 Ill. App. 2d 306, 322, 173 N.E.2d 534.

■■ Plaintiff's contentions that he was prejudiced by the court's declaring a mistrial are not supported by the record. The court declared a mistrial prior to the impaneling of 12 jurors and before any evidence was taken. A mistrial vitiated all prior proceedings and in legal effect was equivalent to no trial at all. (*Haywood v. Swift & Co.* (1st Dist. 1964), 53 Ill. App. 2d 179, 181, 202 N.E.2d 880.) A jury panel was subsequently selected, and the trial continued. Plaintiff is entitled to a trial before a qualified and impartial jury. The record does not show nor does plaintiff contend that the jury was either unqualified or biased. Thus we are not persuaded that the court's exercise of discretion in declaring a mistrial resulted in any substantial prejudice to plaintiff.

■■ Plaintiff contends the court committed error by refusing to poll the jury. While we agree with plaintiff's contention that one has an absolute right to have the jury polled (*Buchholz v. Hartzell* (5th Dist. 1971), 130 Ill. App. 2d 927, 930, 267 N.E.2d 35), the right is dependent on his request to do so. (*In re Estate of Rupinski* (1st Dist. 1970), 131 Ill. App. 2d 393, 399, 266 N.E.2d 190.) Plaintiff contends that his counsel specifically requested the court to poll the jury. During arguments heard by the court to determine what evidence should go to the jury, plaintiff's counsel stated that he did not waive polling of the jury. However, it appears that he failed to demand that the jury be polled at the time the verdict was returned. Plaintiff's failure to request the polling of the jury waives his right to do so. *In re Estate of Rupinski*, at 399.

■■ Plaintiff complains that he was severely prejudiced because the court improperly "struck the testimony of Donna Olds," a rebuttal witness for plaintiff. Plaintiff's account of the proceedings is misleading. Defense counsel did not move to strike Ms. Olds' entire testimony as plaintiff contends but asked the court to strike only her testimony as to Ollie Compton's present employment. The court then heard arguments on the issue outside the presence of the jury. The court ultimately ruled Ms. Olds' testimony should stand, and the jury was so instructed. The record does not show how plaintiff could have been prejudiced in view of the fact that the court ruled in his favor, and the jury was informed that Ms.

Olds' testimony stands. Any error in the exclusion of a witness' testimony is completely cured by thereafter admitting the testimony. See *Paden v. Rockford Palace Furniture Co.* (1921), 220 Ill. App. 534, *cert. denied* (1921), 257 U.S. 645, 66 L. Ed. 413, 42 S. Ct. 54.

Plaintiff alleges that the court made improper remarks to the jury which biased the jury against plaintiff and gave unwarranted support to defendant's case. The record reflects that many of the comments of which plaintiff complains were made out of the presence of the jury. Thus, the court's remarks could not have damaged plaintiff's credibility with the jury.

■■ Our examination of the record leads us to conclude that the alleged unfair rulings, remarks and comments of the court were not improper. These remarks concerned statements or conduct of plaintiff and his counsel. Neither singly nor cumulatively did these comments cause substantial prejudice to plaintiff. (*Gasperik v. Simons* (1st Dist. 1970), 124 Ill. App. 2d 360, 366, 260 N.E.2d 458.) Wide latitude must be allowed the trial judge in the conduct of a trial. It is only when his comments are of such a nature as would ordinarily create prejudice in jurors' minds do they constitute reversible error. *Taylor v. Carborundum Co.* (1st Dist. 1969), 107 Ill. App. 2d 12, 28, 246 N.E.2d 898.

## II

Plaintiff alleges the court committed error in allowing defendant to use unfair tactics during cross-examination in an attempt to impeach plaintiff's witnesses. Plaintiff specifically cites as error the court's allowing defendant allegedly to improperly cross-examine Lieutenant Drammis who was called to identify a Chicago Police Department report with certain words deleted. During cross-examination defense counsel introduced another copy of the police report and questioned Lieutenant Drammis as to whether the two reports were identical, absent the obliterated words. Similar circumstances were present in *Pellico v. Jackson* (1st Dist. 1966), 70 Ill. App. 2d 313, 331, 217 N.E.2d 281. In *Pellico* the appellee argued that an officer should not have been cross-examined about copies of police reports that did not show a mark which was indicated on the original police report. The court found that such cross-examination was proper, stating that a valid question arose concerning whether the mark in question was placed on the report when it was originally prepared.

■■ In the case at bar it appears that the purpose in introducing defendant's copy of the police report was to determine why certain words were deleted from plaintiff's copy of the report. It was not unreasonable for the court to allow cross-examination of a witness who authenticated a report where portions of the report are crossed out. The

final status of a discrepant report is a question for determination by the jury. *Pellico v. Jackson,* at 332.

■■ Plaintiff contends that defense counsel also used unfair tactics in attempting to impeach the testimony of plaintiff and plaintiff's wife. During direct and cross-examination plaintiff stated that he had not filed a claim for workmen's compensation. During cross-examination defense counsel, in an attempt to impeach plaintiff, endeavored to show plaintiff's prior inconsistent statements made in plaintiff's deposition. Showing that at a prior time a witness has made statements inconsistent with his testimony is an appropriate method of testing the credibility of a witness. (*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.) Plaintiff testified that he received a similar injury to his back three weeks after the alleged injury he received at Woolworth's. It was not unreasonable for the court to conclude that the matters brought out on impeachment were material to the issues in the case.

■■■ Plaintiff alleges that it was error for the court to allow defendant to inquire whether plaintiff was ever reprimanded by his employer for engaging in a fistfight in December 1966. Generally evidence of a person's conduct on another occasion is irrelevant to prove that the person is likely to have exhibited the same conduct on the occasion in issue. (*Bevelheimer v. Gierach* (1st Dist. 1975), 33 Ill. App. 3d 988, 995, 339 N.E.2d 299.) The record reflects that plaintiff's counsel objected to defense counsel's question as to whether plaintiff had been involved in a fistfight. However, plaintiff did not object to the introduction of a letter dated December 29, 1966, reprimanding plaintiff for his participation in the fistfight. Plaintiff's failure to object to the admission of the letter waives plaintiff's right to claim he was prejudiced by admission of evidence of the fistfight. Having made no objection to the introduction of the letter, plaintiff cannot now complain that the letter was not evidence of the facts therein stated. (*Hammer v. Slive* (2d Dist. 1962), 35 Ill. App. 2d 447, 452, 183 N.E.2d 49.) Objections to evidence not properly made at trial cannot be made for the first time on appeal. (*Tolbird v. Howard* (1969), 43 Ill. 2d 357, 253 N.E.2d 444.) Any error committed by the court in allowing defendant to ask plaintiff about a fistfight was not grounds for reversal. Such rulings on evidence are harmless where the result reached was not affected thereby and was the only result warranted by the other evidence in the case. *Gillespie v. Norfolk & Western Ry. Co.* (4th Dist. 1972), 3 Ill. App. 3d 779, 784, 278 N.E.2d 420.

The other alleged errors alluded to by plaintiff are based on the trial court's discretionary rulings on evidence. The scope and extent of cross-examination with respect to appropriate subjects of inquiry rest in the sound discretion of the trial court. Only a clear abuse of this discretion resulting in manifest prejudice will constitute grounds for reversal. *Public*

*Taxi Service, Inc. v. Barrett* (1st Dist. 1976), 44 Ill. App. 3d 452, 357 N.E.2d 1232.

## III

■■ Plaintiff contends that the court refused certain instructions tendered by plaintiff which were vital to instruct the jury on the issues in the case. We note that plaintiff has not alleged which of his refused instructions were not adequately covered by the instructions given. Plaintiff also has failed specifically to allege what issues were omitted in the given instructions. We are not required to examine whether a series of instructions adequately states the law unless plaintiff specifically alleged how the court erred in giving or refusing certain instructions. *Friberg v. Zeutschel* (1942), 379 Ill. 480, 41 N.E.2d 512.

However, we have examined the record and found the tendered instructions were predominately IPI instructions which did not incorrectly state the applicable law. The object of jury instructions is to inform the jury clearly of the issues presented, the principles of law to be applied and the necessary facts to be proved to justify a verdict. (*Winston v. Chicago Transit Authority* (1st Dist. 1971), 2 Ill. App. 3d 151, 156, 276 N.E.2d 65.) The criterion is whether, considering the instructions in their entirety, the jury was fairly, fully and comprehensively informed on the relevant principles. Any technical errors which do not cause substantial prejudice will not be deemed grounds for reversal. *Nowakowski v. Hoppe Tire Co.* (1st Dist. 1976), 39 Ill. App. 3d 155, 162, 349 N.E.2d 578.

## IV

Plaintiff's final contention is that the jury's verdict was against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence when an opposite conclusion is clearly apparent (*Purdom v. Swanson* (2d Dist. 1970), 130 Ill. App. 2d 549, 552, 263 N.E.2d 883) or the finding of the jury appears to be unreasonably arbitrary and not based on the evidence. *Cora v. Chicago Housing Authority* (1st Dist. 1971), 131 Ill. App. 2d 23, 29, 268 N.E.2d 497.

Plaintiff maintains that the jury's findings were unreasonable. He asserts that the testimony of plaintiff and his wife was corroborated by Lieutenant Drammis, a disinterested witness. However, the record reflects Lieutenant Drammis did not witness the alleged occurrence at the Woolworth store but could only testify to plaintiff's physical condition after the lieutenant arrived at the store. In viewing the record, it is reasonable to assume that the jury did not believe plaintiff sustained injuries to the extent he claimed. The record reflects numerous inconsistencies in the testimony of both plaintiff and his wife. Plaintiff and his wife testified that plaintiff was working two full-time jobs until he was

allegedly injured at Woolworth's on December 2, 1967. However, the record clearly shows plaintiff had taken a voluntary leave of absence from work three months before the incident at Woolworth's. Plaintiff returned to work on the day he was scheduled to return, one week after the alleged injuries occurred at defendant's store. Furthermore, plaintiff never told any doctor about any injuries resulting from an incident at Woolworth's. Plaintiff told Dr. Tannehille and Dr. Arenson that his injuries were caused by accidents occurring at work.

■■ Ollie Compton was the only occurrence witness to testify for defendant. Plaintiff contends that Compton's credibility was impeached and, therefore, his testimony was unworthy of belief. Although the record reflects slight inaccuracies in Compton's testimony, the jury apparently chose to believe his testimony. A reviewing court should not substitute its judgment for that of a jury in passing on matters of credibility of witnesses when the opposite conclusion to that drawn by the jury is not clearly apparent. (*Beatrice Foods Co. v. Gallagher* (4th Dist. 1964), 47 Ill. App. 2d 9, 23, 197 N.E.2d 274.) The jury found in defendant's favor, and as a reviewing court we cannot sit as a second jury to consider the nuances of evidence and the demeanor and credibility of witnesses. (*Murphy v. Kleen Leen, Inc.* (5th Dist. 1976), 41 Ill. App. 3d 436, 354 N.E.2d 415.) We do not find the jury's acceptance of defendant's position and the rejection of plaintiff's position to be so unreasonable or arbitrary as to require a reversal of the verdict. *Nowakowski v. Hoppe Tire Co.* (1st Dist. 1976), 39 Ill. App. 3d 155, 159, 349 N.E.2d 578.

For the foregoing reasons we find no reversible error, and the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING and BROWN, JJ., concur.