J-S13001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LESTER JAMAL JOHNSON | |
| Appellant | No. 1881 WDA 2013 |

Appeal from the PCRA Order November 6, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011740-2004,
CP-02-CR-0012721-2004, CP-02-CR-0012723-2004,
CP-02-CR-0014023-2004

BEFORE:  LAZARUS, J., STABILE, J., and FITZGERALD, J.*

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 6, 2016**

Lester Jamal Johnson appeals, *pro se*, from the order of the court of Common Pleas of Allegheny County denying his petition for relief under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546 ("PCRA").  After our review, we affirm.

A jury convicted Johnson of two counts of first-degree murder.  After the jury could not reach a unanimous verdict on the death penalty, the court sentenced Johnson to two consecutive terms of life imprisonment, plus 35 to

_____

* Former Justice specially assigned to the Superior Court.

70 years' incarceration on other counts.[1] Johnson filed a direct appeal on January 15, 2010. This Court affirmed Johnson's judgment of sentence and the Pennsylvania Supreme Court denied his petition for allowance of appeal. On September 24, 2012, Johnson filed a timely PCRA petition,[2] *pro se*, and the court appointed counsel. Counsel filed an amended petition, and the court scheduled a hearing. Following the hearing, the PCRA court granted relief in part, amending Johnson's sentence on the unlawful restraint convictions, and dismissed Johnson's remaining claims as meritless.

Johnson filed a notice of appeal. On December 30, 2013, counsel filed a concise statement of errors complained of on appeal pursuant Pa.R.A.P. 1925(b). Thereafter, on September 18, 2014, Johnson filed a petition with this Court for leave to proceed *pro se.* On September 19, 2014, this Court directed the trial court to hold a **Grazier**[3] hearing. **See** Per Curiam Order, 9/19/14.

---

[1] Johnson was also charged with two counts each of kidnapping, 18 Pa.C.S. § 2901(a), unlawful restraint, 18 Pa.C.S. § 2901, and criminal conspiracy, 18 Pa.C.S. § 903.

[2] On November 20, 2012, Johnson's judgment of sentence became final after our Supreme Court denied allowance of appeal on August 22, 2012, and the 90-day period for filing a petition for writ of certiorari to the United States Supreme Court expired. **See** 42 Pa.C.S. § 9545(b)(3); U.S. Supreme Court Rule 13. Accordingly, Johnson had until November 20, 2013 to file a timely PCRA petition.

[3] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988).

Following the ***Grazier*** hearing, the trial court concluded that Johnson had knowingly, intelligently and voluntarily waived his right to counsel. The court permitted counsel to withdraw, and granted Johnson leave to file a *pro se* Rule 1925(b) Statement. ***See*** Order, 9/19/14.

On July 27, 2015, Johnson filed his appellate brief. That same date Johnson filed an application for relief, seeking to strike the filed brief and file a new appellant's brief, and requested an extension of time to file the brief. This Court, in a *per curiam* order, granted Johnson's request. Johnson filed his appellate brief on September 4, 2015, raising the following issues for our review:

1. Did the PCRA court abuse its discretion when it denied Johnson's claim that direct-review counsel was ineffective for not challenging the suppression ruling on appeal?

2. Did the PCRA court abuse its discretion when it denied Johnson's claim that the Commonwealth violated ***Brady***[4] by withholding the DEA [Drug Enforcement Agency] report?

3. Did the PCRA court abuse its discretion when it denied Johnson's claim that trial counsel was ineffective for not requesting Judge Sasinoski to recuse himself?

4. Did the PCRA court abuse its discretion when it denied Johnson's claim that trial counsel was ineffective for not subpoenaing Dale Jones to trial?

When reviewing a PCRA court's findings, we are limited to determining whether the court's findings are supported by the record and whether its

---

[4] ***Brady v. Maryland***, 373 U.S. 83 (1963).

- 3 -

decision is free from legal error. *See Commonwealth v. Lane*, 81 A.3d 974 (Pa. Super. 2013). Further, to obtain relief on a claim of ineffective assistance of counsel, Johnson must show that there is merit to the underlying claim; that counsel had no reasonable basis for his course of conduct; and finally, that there is a reasonable probability that but for the act or omission in question, the outcome of the proceeding would have been different. *Commonwealth v. Fletcher*, 750 A.2d 261, 273–74 (Pa. 2000); *Commonwealth v. Pierce*, 527 A.2d 973, 974 (Pa. 1987). In reviewing any particular claim of ineffectiveness, we need not determine whether the first two prongs of this standard are met if the record shows that Johnson has not met the prejudice prong. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995).

First, Johnson claims that direct appeal counsel was ineffective for not challenging the trial court's order denying his motion to suppress the photographic identifications made by two eyewitnesses, Donna Peoples and Samuel Walter. He claims the photo array was suggestive because Johnson was the only "light-skinned" Black male on the array.

Peoples testified she was driving along Lincoln Avenue and stopped at a traffic light at the intersection of Lincoln Avenue and Lemington Avenue. She looked out her driver's-side window and saw a shirtless man lean on a pole near the corner, then slide down the pole and fall over. The man's shirt was wrapped around his hands, and he was bleeding. When the light turned green, she went through the intersection and pulled over to the curb. She

called 9-1-1 and then got out of her car and walked toward the injured man. At this point, she saw a white four-door Toyota traveling down Lemington Avenue, stopping at the intersection. A slender, light-skinned African American male got out of the car and approached the man. At first she thought the man's friends were helping him, and would take him to the hospital; she even told 9-1-1 that assistance was no longer needed. Peoples was close enough to see the man strike the victim in the face and take something from his pockets; she realized that the men were not there to help, and saw them stuffing him in the back of the Toyota. N.T. Trial, 4/20/09, at 205-10. Peoples screamed for them to stop, but the car pulled away. Peoples was close enough to get the license plate number. *Id.* at 214, 216.

Later, when police arrived, Peoples was taken to the police station for an interview. The next day, Peoples was shown a photo array and immediately selected a picture of Johnson as the man she had seen trying to put the injured man into the Toyota. She stated that her identification was a "9" on a scale of 1 to 10. *Id.* at 220-22, 273, 241, 1187, 1194, 1203. Peoples also made a subsequent in-court identification of Johnson. *Id.* at 213-14, 238.

Another eyewitness, Samuel Walter, a paramedic, was driving an ambulance, and as he approached the intersection of Lincoln and Lemington, he saw the victim lying on the corner with his feet out in the street. *Id*. at 296-97. Walter also saw the white Toyota pull up and, through his driver's

side mirror, observed Johnson and another black male loading the victim into the car. *Id.* at 318-20, 333, 374.

The next night, the victim was found, shirtless and with his pants and boxer shorts pulled down past his buttocks, in the backseat of the Toyota Camry. He had suffered three gunshot wounds, one in the left side of his back, which cut his left renal artery and vein, one through the back of his left forearm, and one in his left leg. The Allegheny County Medical Examiner concluded that the victim had died as a result of these gunshot wounds. *Id.* at 62-72.

A few days later, Shawnte Betts, the daughter of the woman in whose name the Toyota was registered, was also found dead about one-quarter mile from where Jones' body was found in the Toyota. Betts was killed by one gunshot wound to the forehead. Betts' mother stated that the two victims had been in a relationship for about six months. *Id.* at 558-60, 564, 568, 570-71.

On December 30, 2013, Scott Coffey, Esquire, filed a Rule 1925(b) Statement on behalf of Johnson, raising thirteen errors, the last of which was whether direct appeal counsel, Matthew Debbis, Esquire, was ineffective for not challenging the trial court's order denying suppression of Peoples' and Walter's pretrial identification. After Johnson was granted leave to proceed *pro se*, Attorney Coffey was permitted to withdraw and the court granted Johnson's oral request to file an amended Rule 1925(b) statement. Johnson filed his *pro se* Rule 1925(b) statement and presented the issue of

direct appeal counsel's ineffectiveness for not challenging the denial of his request to suppress the pretrial identification as his first claim of error. ***See*** *Pro Se* Concise Statement of Errors, 1/23/15. In its Rule 1925(a) opinion, the court stated the pretrial procedure was not suggestive, that both witnesses had an opportunity to observe Johnson and were able to make independent in-court identifications, and the reliability of the eyewitnesses' identifications was subjected to cross-examination. ***See*** PCRA Court Opinion, 2/17/2015, at 4.

In order to establish that counsel was ineffective for not challenging the court's order denying his motion to suppress the photographic identifications made by Peoples and Walter, Johnson must show that the totality of the circumstances indicate that the identifications were unreliable. ***Commonwealth v. Baker***, 614 A.2d 663, 668 (Pa. 1993). Specific factors to be taken into account include, *inter alia*, the witness' ability "to observe the criminal act; the accuracy of photo array selection and other descriptions; the lapse of time between the act and any line-up; and any failure to identify the defendant on prior occasions." ***Id.*** In other words, the issue here, where Johnson claims the array was unduly suggestive because he was the only light-complexioned Black male in the photo-array, is whether the challenged identification has "sufficient indicia of reliability" to warrant its admission even though the procedure was allegedly suggestive. ***Commonwealth v. Thompkins***, 457 A.2d 925 (Pa. Super. 1983).

"A photographic identification is unduly suggestive when the procedure creates a substantial likelihood of misidentification." ***Commonwealth v. Fisher***, 769 A.2d 1116, 1126 (Pa. 2001). "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics." ***Id***. Here, the photo array included pictures of eight Black males, all of whom had similar features, hair (short cropped) and facial hair (thin mustache and slight beard). Peoples described Johnson to police at the scene as a "light-skinned" Black male, and of the group, one male is the lightest complexioned. Arguably, Johnson's photograph, in that respect, stands out more than the others.

When an out-of-court identification is alleged to be tainted, an in-court identification may still stand if, considering the totality of the circumstances, the identification "had an origin sufficiently distinguishable to be purged of the primary taint." ***Commonwealth v. Abdul–Salaam***, 678 A.2d 342 (Pa. 1996); ***see also Commonwealth v. James***, 486 A.2d 376 (Pa. 1985). The factors a court should consider in determining whether there was an independent basis for the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness during the confrontation; and (5) the length of time between the crime and the confrontation. ***Id.*** at 380.

Here, both Peoples and Walter directly observed Johnson loading the victim into the back seat of the Toyota. In light of the unusual situation, both eyewitnesses were directly focused on the scene. Peoples identified Johnson the day after the crime, and Walter identified Johnson, as well as Johnson's co-conspirator, two days after the crime. Walter testified that while he initially recognized the actors in both arrays, he did not tell the detectives right away because he was frightened about getting involved and did not want to be a witness. N.T. Trial, 4/20/09, at 315-17, 321, 328, 376. Both witnesses testified that they had a clear view of Johnson as he was trying to force the victim into the car, in the daylight, and both were able to identify Johnson in court. *Id.* at 95-101, 212-224. Further, both Peoples and Walter were extensively cross-examined with respect to their identifications, *id.* at 101-20, 227-54, and the jury was free to credit Peoples' and Walker's in-court identifications.[5] Based on the totality of the

_____

[5] We note that two other eyewitnesses also testified. Dorian Perry and Tavon Howze, who lived in the neighborhood where the crime occurred, also identified Johnson as the man who put the victim in the car. Charles Scott, who knew Johnson from the neighborhood, saw Johnson and the victim a short time before the victim's collapse. Scott testified that Johnson was ordering the victim to get into the car, the victim refused, and Johnson shot him in the leg. N.T. Trial, *supra* at 268. The victim attempted to get away, limping down the street, and Johnson fired three or four more times in the direction of the victim's back. *Id.* at 269, 285. Scott saw the victim collapse; he also saw the ambulance, driven by Walters, pull over. *Id.* at 271, 287. He then saw Johnson pick the victim up, look up at him (Scott), and then put the victim in the car. *Id.* at 273.

circumstances, we conclude that there was sufficient indicia of reliability and a basis independent from the pre-trial photo array that would support admission of Peoples' and Walter's in-court identification. Therefore, we cannot conclude that Johnson was prejudiced by counsel's failure to raise this issue on direct appeal. *Pierce*, *supra*; *see also Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998) (when it is clear petitioner's ineffective assistance claim has failed to meet prejudice prong of ineffectiveness test, claim may be dismissed on that basis alone).

Next, Johnson claims the PCRA court erred in denying relief on his *Brady* claim. He claims that the victim was an informant for the Drug Enforcement Agency (DEA) at the time of his death, and that the report implicated others in the victim's murder. We find no error.

To establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. *Commonwealth v. Hutchinson*, 25 A.3d 277, 310 (Pa. 2011). As the PCRA court points out, the DEA report to which Johnson refers was "not exculpatory in the least." PCRA Court Opinion, 2/17/15, at 7. In fact, the report implicated Johnson and his co-defendant as responsible for kidnapping and shooting Jones (identified in the report as CS1). *See* Amended PCRA Petition, 5/30/2013, Exhibits Three (A)-(G), ¶¶ 59-63. Accordingly, we find no error. *Hutchinson*, *supra*.

In his third issue, Johnson claims that the PCRA court erred in denying his claim that trial counsel, Wendy Williams, Esquire, was ineffective for not seeking the trial judge's recusal. In his PCRA petition, Johnson claimed the trial judge, the Honorable Kevin G. Sasinoski, "showed high favor towards victim James Jones in a hearing . . . only one month prior to his death[,] by removing him from house arrest . . . so Jones [could] work effectively as an informant for the D.E.A." Amended PCRA Petition, at 35-36. Johnson baldly claims that this was a conflict of interest because had the court not put Jones "back on the street, Jones . . . would still be alive." Appellant's Brief, at 25.

A judge should recuse himself "whenever there is substantial doubt as to his ability to preside impartially. The burden to show prejudice, however, is on the party seeking recusal." ***Commonwealth v. Lewis***, 460 A.2d 1149, 1151–52 (Pa. Super. 1983). At the PCRA hearing, Johnson did not question Attorney Williams regarding her reasons for not filing a motion to recuse. ***See*** N.T. PCRA Hearing, 10/8/13, at 5-21. Beyond his blanket statement that Judge Sasinoski had a conflict of interest because he had let Jones out on bond, Johnson presented no evidence of bias, prejudice or unfairness. As such, Johnson has failed to establish how he was prejudiced by counsel failure to seek recusal. ***See Commonwealth v. Jones***, 811 A.2d 994, 1003 (Pa. 2002) (where defendant does not develop ineffectiveness claim in meaningful manner, it is insufficient to warrant

relief). Therefore, Johnson's claim of ineffectiveness must fail. *Pierce*, *supra*.

Finally, Johnson claims the PCRA court erred in denying relief on his claim that trial counsel was ineffective for failing to subpoena witness Dale Jones.

> Where a defendant claims that counsel was ineffective for failing to call a particular witness, we require proof of that witness's availability to testify, as well [as] an adequate assertion that the substance of the purported testimony would make a difference in the case. Generally, we require a defendant to demonstrate that:
>
> > (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Clark*, 961 A.2d 80, 90 (Pa. 2008) (citation omitted).

At the October 8, 2013 hearing, Attorney Williams testified she was aware of the existence of Dale Jones and others as potential witnesses. However, she stated, "They wouldn't talk to us. There were no meaningful interviews or information gleaned . . ." N.T. PCRA Hearing, 10/8/13, at 10. Further, at the PCRA hearing, Attorney Williams was not questioned specifically with respect to Dale Jones. Thus, Johnson did not establish that Dale Jones was willing to testify for the defense. *Clark*, *supra*. Moreover, in light of the hearing testimony, there is no indication that counsel's failure to call Dale Jones either prejudiced Johnson or denied him a fair trial.

- 12 -

Therefore, Johnson's claim of ineffectiveness must fail.   ***See Pierce***, ***supra***;

***see also Commonwealth v. Cox***, 983 A.2d 666 (Pa. 2009).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2016