J-A13004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
  :
v.   :
  :
  :
  :
BRANDON KULB   :
  :
Appellant   :   No. 4055 EDA 2017

Appeal from the Judgment of Sentence October 26, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005518-2014

BEFORE:  SHOGAN, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:            **FILED JULY 15, 2019**

Appellant, Brandon Kulb, appeals from the judgment of sentence entered on October 26, 2017, in the Philadelphia County Court of Common Pleas.  We affirm.

The record in this matter reveals that on March 20, 2014, Police Officer Tiffany Perez was off duty, wearing street clothes, and driving her personal vehicle on Edgemont Street in Philadelphia.  N.T., 2/1/17, at 144-145.[1]  When

_____

[1] The certified record contains two versions of the notes of testimony from the February 1, 2017 proceedings.  One version ("Version I") contains the complete notes of testimony from the February 1, 2017 proceedings, including the disposition of Appellant's motion *in limine* and Appellant's not-guilty plea. Version I is labeled "Trial (with a jury)."  N.T., 2/1/17, at 1.  In Version I, the trial testimony begins on page 46.  The second version ("Version II") contains only trial testimony, and it is labeled "Trial Excerpt (with a jury)."  N.T., 2/1/17, at 1.  In Version II, the trial testimony begins on page 4.  Throughout this Memorandum, we refer only to Version I.

_____

\*   Retired Senior Judge assigned to the Superior Court.

Officer Perez reached Stokley Playground near the intersection of Edgemont and Elkhart Streets, she heard several popping sounds, and she identified these sounds as gunshots. *Id.* at 145. Officer Perez saw a man cross in front of her vehicle running away from the playground. *Id.* This man was pursued by two men, and Officer Perez saw one of the men pointing a firearm at the fleeing man. *Id.* The individual brandishing and firing the gun was later identified as Ryan DeOrio; DeOrio's companion was Appellant. *Id.* at 146. Officer Perez positively identified Appellant in court as the man who was with DeOrio as they pursued the third man. *Id.* Officer Perez testified that when she heard the gunshots, she called 911 and followed Appellant and DeOrio. *Id.* On-duty officers arrived and followed DeOrio and Appellant. *Id.* at 93. The on-duty officers ultimately detained DeOrio and another man; however, when Officer Perez arrived, she informed the officers that the man apprehended with DeOrio was not Appellant. *Id.* at 155, 159. Appellant was subsequently arrested on April 11, 2014. Complaint, 4/11/14.

> On January 31, 2017, a hearing was held regarding [A]ppellant's Pre-Trial Motion [*in limine*[2]] to Exclude Hearsay Evidence, namely the proffered testimony of Police Officer [James] Martin that two young boys had identified [Appellant] as the shooter. At this hearing, Officer Martin testified that on March 20, 2014, he received, a radio call for a possible shooting near Stokley Playground. N.T. 1-31-17, p. 14. Upon arriving within a few blocks of the playground he saw children running from the area, including two boys who ran over to him while he was still in his police vehicle. Officer Martin testified that the boys were "extremely terrified." He thought they were around nine or ten

---

[2] The trial court treated this as a motion *in limine*. N.T., 2/1/17, at 9.

years old, and one of them was crying. N.T. 1-31-17, p. 15. Officer Martin testified that the children told him "a male had fired a gun in the playground and the male's name was [Appellant]." *Id.* at p. 15. He described both boys as running quickly, shaking, looking terrified, and one boy's eyes were red and he appeared to be crying. N.T. 1-31-17, pp. 29-30.

Officer Martin testified that while he was with the boys he relayed over his police radio that the children had identified [Appellant] as the shooter. The original call that dispatched Officer Martin to the playground was issued at 6:37 pm on March 20, 2017. N.T. 1-31-17, pp. 26-27. The automatic timestamp of the recording of Officer Martin's outgoing radio call disseminating the information the children had given him was ten (10) minutes later at 6:47 pm. N.T. 1-31-17, p. 27.

Trial Court Opinion, 8/6/18, at 3-4.

[Appellant] was found guilty of Aggravated Assault, … Conspiracy to Commit Aggravated Assault, Firearms Not to be Carried Without a License, and Carrying a Firearm in Public in Philadelphia.[1] These charges arose from a shooting that took place on March 20, 2014, at Stokley Playground, in the Port Richmond area of Philadelphia. Jury selection took place on January 31, 2017, with twelve jurors and two alternates selected. On February 1, 2017, the jury was sworn in and trial began, with the prosecution and defense both resting on February 2, 2017. The jury returned its verdict on February 6, 2017, finding [A]ppellant guilty of the above charges.

> [1] 18 Pa.C.S.A. § 2702§§A, § [903], § 6106 §§A1, and § 6108[.]

\* \* \*

Sentencing was deferred until October 26, 2017, at which time [A]ppellant was sentenced to an aggregate term of 14 to 28 years' state confinement. A Motion for Reconsideration of Sentence was filed on November 2, 2017, and subsequently denied by this court on November 16, 2017. A timely appeal followed.

- 3 -

Trial Court Opinion, 8/6/18, at 1-2.   Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents three issues for this Court's consideration:

> [1.] Whether the trial court erred in permitting hearsay testimony from witnesses, namely Police Officer James Martin, who was permitted to testify, and a Police Radio call with Police Officer Martin speaking that was played, that relayed that two unidentified juveniles told Officer Martin that [Appellant] had committed the shooting at issue, where no independent evidence was presented that the declarants either witnessed the incident or knew the [Appellant] by name?
>
> [2.] Whether the trial court erred in permitting Police Officer Tiffany Perez to make an in-court identification at trial, after ruling that her identification of the [Appellant] through a single photo was suggestive and inadmissible, and where the Officer lacked an independent basis to make the in-court identification nearly three years later?
>
> [3.] Whether the trial court erred in permitting irrelevant and unfairly prejudicial statements, as well as statements that spoke of [Appellant's] Fifth Amendment Right to remain silent, made by [Appellant] on his recorded prison phone calls, to be played for the jury?

Appellant's Brief at 5.

Appellant's issues concern the admissibility of evidence.  It is well settled that the admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. **Commonwealth v. Bidwell**, 195 A.3d 610, 616 (Pa. Super. 2018).  "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is

- 4 -

manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* (citation omitted).

In his first issue, Appellant avers the trial court erred in denying his motion *in limine* to exclude hearsay and argues that the trial court erred in applying the excited utterance exception to the prohibition on hearsay. Specifically, Appellant asserts that there was no independent corroboration of statements made to Officer James Martin by two juveniles who allegedly identified Appellant as the shooter at Stokley Playground. Appellant's Brief at 12. For this same reason, Appellant asserts that the trial court also erred in permitting the prosecution to play a recording of the police radio call in which Officer Martin relayed the juveniles' statements. *Id.* at 13-16. After review, we conclude that no relief is due.

Our standard of review of a denial of a motion *in limine* is as follows:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Moser*, 999 A.2d 602, 605 (Pa. Super. 2010) (citation omitted). Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted, and it is generally inadmissible unless it falls within an exception to the hearsay rule set forth in the Pennsylvania Rules of Evidence. *Commonwealth v. Manivannan*, 186 A.3d 472, 482 (Pa. Super.

2018) (citing *Commonwealth v. Mosley*, 114 A.3d 1072, 1084 (Pa. Super. 2015); Pa.R.E. 801 and 802). Here, the trial court concluded that the statements made by the juveniles were admissible under the excited utterance exception. Trial Court Opinion, 8/6/18, at 5. "[A]n excited utterance is [a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Commonwealth v. Mollett*, 5 A.3d 291, 310 (Pa. Super. 2010) (citing Pa.R.E. Rule 803(2)). "When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition." Pa.R.E. Rule 803(2).

As noted, Appellant is challenging the admissibility and use of the juveniles' statement to Officer Martin. Officer Martin testified that within minutes of the reports of a shooting at the playground, he encountered two juveniles who were crying. N.T., 1/31/17, at 15. Officer Martin relayed the juveniles' statements over the police radio stating that the juveniles identified Appellant by name and asserted that Appellant was the shooter. *Id.*

The trial court concluded that the juveniles' statements to Officer Martin were made close in time to the shooting at the playground and under the stress of immediately experiencing the shooting. Trial Court Opinion, 8/6/18, at 5-6 (citing N.T., 2/1/17, at 5-9). Based on the record before us, we discern no abuse of discretion in this regard.

However, Appellant focuses on the second requirement of the excited utterance exception when the declarant is unavailable to testify: the corroboration component from Pa.R.E. 803(2). Appellant's Brief at 13. Appellant avers that there was no corroboration, and, therefore, the trial court abused its discretion in allowing Officer Martin to testify relative to what the juveniles said. After careful review, we disagree.

Our scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013). We point out that although Appellant filed a motion to suppress Officer Perez's identification of Appellant, we are not now reviewing the ruling on the suppression motion; we are reviewing an order disposing of a pretrial motion *in limine* concerning hearsay. A motion *in limine* differs from a suppression motion in that a suppression motion is filed in an effort to preclude evidence allegedly obtained in violation of a defendant's constitutional rights, while a motion *in limine* is filed in an effort to preclude evidence that was constitutionally obtained but is prejudicial to the moving party. *Commonwealth v. Reese*, 31 A.3d 708, 715 (Pa. Super. 2011). Appellant's motion to suppress was based on an alleged due process violation. Motion to Suppress, 1/5/17. The issue currently under review is the ruling on Appellant's motion *in limine* to preclude hearsay that was premised on a violation of the Pennsylvania Rules of Evidence. N.T., 1/31/17, at 9.

Prior to trial, the trial court held a hearing on January 30, 2017, to address Appellant's suppression motion concerning Officer Perez's identification of Appellant. The next day, January 31, 2017, the trial court held a hearing on Appellant's motion *in limine* regarding the use of statements made by the unidentified juveniles to Officer Martin. As noted above, in reviewing a ruling on a motion to suppress, we are limited to the record in the suppression court. *L.J.*, 79 A.3d at 1085. Here, however, we are reviewing an evidentiary ruling on a motion *in limine*, and we discern no such limitation. We conclude that in ruling on the motion *in limine*, the trial court was permitted to consider the entire record, including the suppression hearing.

There was ample corroboration for the juveniles' statements in the record. At the time of the hearing on the motion *in limine*, the trial court already had heard Officer Perez's suppression-hearing testimony concerning her identification of Appellant as the shooter. Officer Perez's statements corroborated the juveniles' statements in that she heard gunshots, observed people fleeing the playground, witnessed DeOrio holding a gun, saw Appellant with DeOrio, and watched as DeOrio and Appellant followed a man from the area. N.T., 2/1/17, at 144-159.[3] Accordingly, we conclude there was no

---

[3] The motion *in limine* was held prior to the introduction of evidence at trial. Thus, the grand jury testimony had not yet been admitted at the time of the hearing on Appellant's motion *in limine*. Nevertheless, the grand jury testimony provided additional independent corroboration for the juveniles' statements, and it could have been proffered if the trial court concluded that

abuse of discretion in the trial court's conclusion that the juveniles' identification of Appellant was an excited utterance and was admitted and utilized properly through Officer Martin's testimony and police radio call as an exception to the prohibition on hearsay.

In his second issue on appeal, Appellant asserts that the trial court abused its discretion in permitting Officer Perez to make an in-court identification of him at trial because her prior out-of-court identification was inadmissible. Appellant's Brief at 16. After review, we conclude that no relief is due.

Appellant filed an omnibus pretrial motion including a motion to suppress Officer Perez's identification of Appellant. Motion, 8/26/15, at unnumbered 2. At the January 30, 2017 hearing on Appellant's motion, it was revealed that on the day of the shooting, March 20, 2014, when off-duty Officer Perez followed Appellant and DeOrio, responding officers showed

---

Officer Perez's statements were not sufficient independent corroboration. Specifically, in his testimony before the grand jury, the victim identified Appellant as the man who shot him. N.T., Grand Jury Testimony, 5/9/14, at 6. The victim referred to Appellant as "B-Dot," and Detective Kenneth Rossiter testified that Appellant's alias is B-Dot. *Id.* at 24. The grand jury transcript was marked as Commonwealth's Exhibit C-20 and admitted without objection. N.T., 2/2/17, at 227-229. We point out that despite his testimony before the grand jury, the victim, while admitting that he was shot on March 20, 2014, at Stokley playground, refused to identify Appellant as the shooter in court. N.T., 2/1/17 at 83-128. However, in addition to his grand jury testimony, the victim's pretrial interview, Commonwealth's Exhibit C-6, in which the victim identified Appellant as the shooter, was admitted into evidence as well. N.T., 2/2/17, at 227-229.

Officer Perez a photograph of Appellant on a computer in a police vehicle. N.T., 1/30/17, at 13-16. This was not an array of pictures; it was a single image of Appellant, and Officer Perez identified Appellant as one of the conspirators. *Id.* at 24. Appellant moved the trial court to suppress Officer Perez's identification of Appellant from the photograph and asked the court to prohibit Officer Perez from identifying Appellant in court. *Id.* at 37. The next day, the trial court granted Appellant's motion regarding Officer Perez's out-of-court identification of Appellant in the photograph concluding the single image was overly suggestive. N.T., 1/31/17, at 6; Order, 1/31/17. However, the trial court denied the motion with respect to Officer Perez making an in-court identification. *Id.*; Order, 1/31/17.

When addressing an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record.... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). Further, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.

- 10 -

Super. 2006). We reiterate that our scope of review is limited to the evidence presented at the suppression hearing. *L.J.*, 79 A.3d at 1085.

A prior identification by a witness, which is suppressed due to its suggestive nature, does not preclude a later in-court identification. *Commonwealth v. James*, 486 A.2d 376, 380 (Pa. 1985). A subsequent identification may be permitted when there is an independent basis for the identification. *Id.* In determining whether an independent basis exists, we consider the following factors:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* (quoting *Commonwealth v. Slaughter*, 394 A.2d 453, 457 (Pa. 1978); *see also Niel v. Biggers*, 409 U.S. 188 (1972)).

The trial court concluded that there was an independent basis for Officer Perez's in-court identification. The trial court reached this conclusion based on Officer Perez's ability to observe Appellant at the scene of the shooting, her background as a police officer, her description of Appellant, and the fact that there was no misidentification. Trial Court Opinion, 8/6/18, at 13 (citing N.T., 1/31/17, at 5-7). Moreover, Officer Perez correctly recognized that when DeOrio was apprehended, the individual with him was not Appellant. N.T., 2/1/17, at 155, 159. Considering our scope and standard of review, we

- 11 -

discern no basis upon which to disturb the trial court's decision on Appellant's suppression motion.

Finally, Appellant avers that the trial court abused its discretion in allowing the jury to hear unfairly prejudicial statements that allegedly infringed on Appellant's Fifth Amendment right to remain silent. These recordings were made during Appellant's phone calls while incarcerated. Appellant's argument on this issue is vague and undeveloped. It is a general claim assailing the use at trial of recorded prison telephone conversations and averment that these recordings violated Appellant's rights under the Fifth Amendment. Appellant's Brief at 18-19. The trial court addressed this issue as follows:

> Appellant's Fifth Amendment argument is wholly without merit. It is well-established law that recorded prison phone calls may be used as evidence for the investigation or prosecution of any crime, pursuant to [18 Pa.C.S. § 5704 (14)(i)(A) and (C)] of the Wiretap Act, which states:
>
> > It shall not be unlawful and no prior court approval shall be required under this chapter for:
> >
> > (i) The county correctional facility shall adhere to the following procedures and restrictions when intercepting, recording, monitoring or divulging an oral communication, electronic communication or wire communication from or to an inmate in a county correctional facility as provided for by this paragraph:
> >
> > > (A) Before the implementation of this paragraph, all inmates of the facility shall be notified in writing that, as of the effective date of this paragraph, their oral communications, electronic communications or wire communications may be intercepted, recorded, monitored or divulged.

[* * *]

(C) The contents of an intercepted and recorded oral communication, electronic communication or wire communication shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

[18 Pa.C.S. § 5704 (14)(i)(A) and (C)].

Every time an inmate makes a telephone call from a Philadelphia County correctional facility, an automated message at the beginning of the call notifies both the inmate and the call recipient that, "You have a global link prepaid call from [caller's name], an inmate at the Philadelphia prison system. The use of three-way or call waiting will disconnect the call. *This call will be recorded and monitored*...[.]" (emphasis added). Prison Call Trans. 4-12-14, p. 1. This message provides the inmate with actual notice that the phone call is being recorded, which the Pennsylvania Supreme Court deemed sufficient in lieu of written notice required by §5704(14)(i)(A) of the statute above in *Commonwealth v. Baumhammers*, 960 A.2d 59 (2008). There, the defendant contended that "it was irrelevant that he was under actual notice that his telephone conversation was being intercepted and recorded, when the statute required that he receive prior written notice." *Id*. at 78. However, the court held,

... there is no basis to conclude that the privacy rights of [Baumhammers] or his parents were infringed when their March 2, 2001 telephone conversation was recorded. These individuals were actually aware that their telephone conversation was being or could be intercepted and recorded by prison authorities. Written notice to [Baumhammers], assuming he never received any, would not have afforded him any greater protection of his right to privacy or that of his parents than the actual notice they possessed at the time of the conversation. Therefore, on this basis alone, [Baumhammers's] argument is wholly without merit.

*Id*. at 79.

Additionally, citing § 5704(14)(i)(C) of the Wiretap Act, the court in *Baumhammers* held "there is no basis for [Baumhammers's] supplemental argument that Section 5704(14)(i)(C) of the Wiretap Act was violated when the contents of the telephone conversation at issue were divulged to an investigating detective and to the Commonwealth's psychiatric expert" because it specifically allows the contents of a recorded prison telephone call to be used in the prosecution or investigation of any crime. *Id.*

Therefore, [A]ppellant's argument that his Fifth Amendment rights were violated is without merit and this portion of the recorded prison telephone call was properly admitted into evidence and played for the jury.

Trial Court Opinion, 8/6/18, at 8-10.

We agree with the trial court. Here, Appellant had actual notice that his telephone conversations made while incarcerated would be recorded and could be used in the prosecution. Thus, any expectation of privacy or Fifth Amendment protection from self-incrimination was waived when Appellant chose to engage in recorded conversations while in prison.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger joins this Memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/15/19